

POSTED ON WEBSITE

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Charlotte Salwasser,<br><br>          Debtor. | Case No. 15-10705-B-11<br><br>DC No. TAA-1 |

### MEMORANDUM DECISION REGARDING MOTION TO DISQUALIFY DEBTOR'S COUNSEL AND TO COMPEL DISGORGEMENT OF FEES

George James Salwasser, the debtor in another chapter 11 case, ("George") brings this motion to disqualify Thomas H. Armstrong, Esq. ("Armstrong") from continuing to represent George's estranged wife, Charlotte Ellen Salwasser ("Charlotte"), in this bankruptcy case (the "Motion"). Before Armstrong filed this bankruptcy for Charlotte, George consulted with Armstrong over a period of fifteen (15) days regarding, *inter alia*, the possibility of filing a chapter 11 bankruptcy for both himself and Charlotte. George alleges that he provided Armstrong with confidential information during the course of these encounters and that Armstrong therefore has a conflict of interest and is disqualified from representing Charlotte. George also seeks an order compelling Armstrong to disgorge any retainer and fees that he has been paid to date in connection with Charlotte's bankruptcy. For the reasons set forth below, the Motion will be granted in part and denied in part. The court finds that Armstrong is disqualified from further representation of Charlotte as the debtor-in-possession, pursuant to

California law, under the "substantial relationship" test. The request to compel disgorgement of fees paid to Armstrong will be denied.[1]

The briefing of this Motion is now complete. Neither party filed a separate statement of disputed material factual issues in compliance with Local Bankruptcy Rule 9014-1(f)(B). They have therefore consented to resolution of the Motion and all disputed material factual issues without an evidentiary hearing pursuant to Fed.R.Civ.P. 43(c). This matter was originally noticed for a hearing, however, the court deemed this matter suitable for resolution without oral argument and the hearing was dropped from calendar. This Memorandum Decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 9014(c) and 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 330[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**BACKGROUND AND FINDINGS OF FACT.**

Charlotte and George (collectively, the "Salwassers") have been married for many years, however, George has filed a marital dissolution action in San Luis Obispo County. Together they have accumulated and managed numerous

---

[1]The Motion is captioned, "Motion to Disqualify Thomas H. Armstrong as a Trial Counsel . . . ." however there is no trial pending. The Motion also requests relief which will not be considered here. George makes a brief request, without specifics, that Charlotte be removed as the DIP and compelled to disgorge any money which she has received in that capacity. The request for appointment of a chapter 11 trustee must be brought by separate motion and supported by competent evidence. The request for disgorgement of money from Charlotte will require an adversary proceeding.

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

properties and business entities.³ At the commencement of this bankruptcy case they owed, either directly or by virtue of personal guarantees, more than $36 million to Central Valley Community Bank ("CVCB" or the "Bank"). The Bank held a security interest in virtually all of the Salwassers' assets and after months of unsuccessful workout negotiations, on February 9, 2015,⁴ filed a civil action in state court to enforce its claim against both Charlotte and George. The Bank also sought a temporary restraining order and the appointment of a receiver to take possession of its collateral while it proceeded to foreclose its lien (the "CVCB Litigation").

On February 11, after being served with the Bank's complaint, George consulted with Armstrong for 1.25 hours to discuss the CVCB Litigation and possible alternatives for response, including potential chapter 11 bankruptcies on behalf of all the CVCB Litigation defendants, including himself and Charlotte. (George's decl. in support of the Mot., 3:26-28, June 25).⁵ Armstrong requested a $40,000 retainer, but for reasons which are not clear, George was unable to obtain the funds. Over a period of fifteen (15) days, George met with, and/or talked to, Armstrong for a documented 6.85 hours. George contends that an attorney-client relationship was formed between Armstrong and himself. However, George never executed a retainer agreement with Armstrong pursuant to Cal. Bus. & Prof. Code § 6148(a). Conversely, Armstrong never sent George a formal letter clarifying that

---

³Charlotte's schedules value her real and personal property assets, including the community property of her marriage to George, to be worth almost $44 million. Two of the Salwasser business entities, West Coast Growers, Inc., a California corporation, and Salwasser, Inc., have filed their own separate chapter 11 bankruptcy cases.

⁴Unless otherwise stated, all events referenced in this Memorandum occurred in 2015.

⁵George's declaration states that George went to see Armstrong, "about everyone named in the [CVCB Litigation], including [Charlotte] and me and the businesses we owned together, I believed he was working for both of us."

there was no such relationship, or that it had terminated.

On February 12, Charlotte also started consulting with Armstrong regarding the CVCB Litigation. She subsequently paid Armstrong a $60,000 retainer and engaged Armstrong to appear on her behalf in the state court at a temporary restraining order hearing.[6] George continued to contact other attorneys regarding bankruptcy representation. On February 26, Armstrong received a communication from another attorney, Marc A. Lieberman, Esq. ("Lieberman"), informing him that Lieberman was being retained to represent George in bankruptcy.[7] Later that same day, Armstrong filed a petition to commence this chapter 11 bankruptcy case for Charlotte for the primary purpose of liquidating the Bank's collateral.[8]

On March 5, Armstrong filed herein an application for employment as counsel for Charlotte's estate pursuant to § 327(a) (the "Employment Application"). That Application was supported by a declaration from Armstrong disclosing his retainer and affirmatively stating that Armstrong was "disinterested" within the definition of § 101(14). In an attached exhibit Armstrong disclosed his prior connection with George as follows:

/ / /
/ / /
/ / /
/ / /

---

[6] Charlotte stated that her daughter provided the funds to pay Armstrong's retainer. Only $20,000 of the retainer was kept by Armstrong. The rest of the retainer was used to secure bankruptcy counsel for the Salwassers' other business entities. (*See* *supra* note 3.)

[7] According to the California State Bar, Marc A. Lieberman maintains a law office in Los Angeles, California, and specializes in the areas of bankruptcy business, contracts, debtor-creditor, and litigation. Mr. Lieberman has not appeared on George's behalf in this case.

[8] The record is silent as to why George and Charlotte did not file a joint petition and those reasons are immaterial to this ruling.

4

**George Salwasser**

 This is Mrs. Salwasser's estranged spouse. He came to my office on February 11, 2014 [sic] and showed me a copy of a state court action for judicial foreclosure. I spoke with him for about 45 minutes to 1 hour that day advising that if he desired legal advice and representation, he would have to retain me. He did not do so.

 I spoke with Mr. Salwasser on the telephone on a number of occasions to speak about the status of the state court case prior to filing the bankruptcy.

 I have met with Mr. Salwasser two (2) more times to apprise him of Central Valley Community Bank's position as to him, and the second time for him to pick up his personal belongings, including clothing and medicines, so he could take home such belongings at one of his properties in Morro Bay, Ca. He also used that time to further discuss issues with the Bank and various properties.

Decl., Ex. A, March 5.

There were no objections to the Employment Application and the court entered an order on March 19, authorizing Charlotte to employ Armstrong as general counsel for this bankruptcy estate pursuant to § 327(a), effective as of February 26, the date the petition was filed.

On May 28, Armstrong filed an application for fees (the "Fee Application") requesting $64,769 as compensation for legal services and reimbursement of expenses. The Fee Application included copies of Armstrong's billing records. It was supported by a declaration from Armstrong which summarized the legal work he had done and disclosed again his prepetition meetings with George and his conversations with Lieberman. The Fee Application was noticed to George through his then attorney, James M. Makasian, Esq. There was no objection and the Fee Application was approved. The record is silent as to whether any of these fees, after application of any remaining retainer, have been paid to Armstrong.

Since its commencement, George has appeared in this case, through several different attorneys, at virtually every hearing and filed objections to many of the pending motions, particularly motions relating to sale of the Salwassers' properties. On June 25, through his fourth attorney, Thomas J. Anton, Esq.,

George filed this Motion to disqualify Armstrong, documenting for the first time his objection to Armstrong's representation of Charlotte. On July 6, George filed a proof of unsecured claim in this bankruptcy; a $133,050 claim based on the estimated value of "separate property" allegedly in the possession of Charlotte.

This Motion was initially scheduled for a hearing on July 23. However, before the hearing, on July 7, George filed his own chapter 11 petition.[9] On August 4, George filed his schedules listing essentially all of the same properties listed in Charlotte's schedules, each with the notation: "This property is in the possession and control of the Charlotte Salwasser Bankruptcy Estate . . . ." George's schedules also list 140 acres of vineyard property as George's separate property (the "140 Acres").

On August 6, Armstrong filed a motion for relief from the automatic stay in George's bankruptcy case (the "§ 362 Motion"). Charlotte's declaration filed in support of that Motion acknowledges George's assertion of a "separate property" interest in the 140 Acres. Charlotte contends that the crops growing on the 140 Acres are collateral for payment of the Bank's secured claim and she seeks permission to enter upon the 140 Acres and perform the needed farming activities. It is not clear at this time whether George will oppose that motion.

**ISSUES PRESENTED.**

1. Whether entry of the initial order approving Armstrong's employment as a "professional person" in this bankruptcy case, precludes subsequent review of Armstrong's eligibility for employment under § 327(a) and Rule 2014(a); and

2. Whether Armstrong's prepetition consultations with George disqualify Armstrong from representing Charlotte and her estate under the Bankruptcy Code and/or California law, and if so,

---

[9]George's chapter 11 bankruptcy was assigned case number 15-12705. George is represented in that case by Justin D. Harris, Esq.

6

3. Whether Armstrong should disgorge the fees he has been paid for representing Charlotte and her bankruptcy estate.

**DISCUSSION AND CONCLUSIONS OF LAW.**

**Review of a Professional's Eligibility for Employment and Compensation.** Pursuant to § 327(a), a debtor in possession, with the court's approval, may employ one or more professional persons, "*that do not hold or represent an interest adverse to the estate*, and that are disinterested persons . . . ." (Emphasis added.) However, even after a professional person is employed, the court retains the supervisory power to revisit the professional person's qualifications for employment and to disqualify a professional whose representation otherwise fails to conform to the "disinterestedness" or "adverse interest" standard. Section 328(c) expressly permits the bankruptcy court to revisit the employment of a professional under § 327(a) and to deny compensation for services and reimbursement of expenses, if, at any time during the employment, "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." *Id.*

**Armstrong Was Properly Employed under 11 U.S.C. §327(a).** Section 327(a), under which a debtor in possession may employ a professional, prescribes a two-pronged test for such employment: the "adverse interest" test, and the "disinterestedness" test. Both of these tests must be met before a professional person is eligible to be employed. Failure to satisfy either of the two prongs under § 327(a) cannot be cured by the clients' waiver or consent; both must be met. *See U.S. Tr. v. S.S. Retail Stores Corp. (In re S.S. Retail Stores Corp.)*, 211 B.R. 699, 703 (9th Cir. BAP 1997) (The attorney "is not prevented from representing the Debtor under the California Rules, but is prevented, as a non-disinterested party, from representing the Debtor pursuant to section 327 of the Bankruptcy Code [which] provides for no such waiver."), appeal dismissed *per curiam*, 162 F.3d

1230 (9th Cir. 1998).

George contends that Armstrong represented an adverse interest and was not "disinterested" within the meaning of § 327(a) and § 101(14) when he filed this bankruptcy for Charlotte and submitted the Employment Application to the court.[10] George's contends that he had an "attorney-client" relationship with Armstrong: "Armstrong was [George's] attorney but he switched sides." (Mot., 2:20-21, June 25.) However, for purposes of this Motion, the court does not need to decide if Armstrong had an attorney-client relationship with George before he filed this bankruptcy case for Charlotte. Section 327(a) is forward-looking. Assuming, *in arguendo,* that some kind of professional relationship did form between George and Armstrong during the course of their meetings, any such relationship necessarily terminated by February 26, when Lieberman notified Armstrong that he was going to represent George. Thereafter, Armstrong could not have been representing George, and George clearly knew that. The timing issue applicable here was explained in *In re AroChem Corp.,* 176 F.3d 610, 623 (2nd Cir. 1999):

/ / /

/ / /

/ / /

/ / /

---

[10]The term "disinterested" is defined in 11 U.S.C. §101(14): "The term "disinterested person" means a person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

8

> At the outset, we note that section 327(a) is phrased in the present tense, permitting representation by professionals "that do not *hold* or *represent* an interest adverse to the estate," and limiting the class of acceptable counsel to those "that *are* disinterested persons." "Congress' use of a verb tense is significant in construing statutes." Thus, counsel will be disqualified under section 327(a) *only if it presently "hold[s] or represent[s] an interest adverse to the estate," notwithstanding any interests it may have held or represented in the past.* Because Caddell has terminated its representation of Wells, it no longer represents Wells' interests and therefore survives the first half of the section 327(a) test.

*Id.* (first emphasis in original, second emphasis added) (section and citations omitted).

The court is satisfied that Armstrong's "relationship" with George, adverse or not, terminated before Charlotte's petition was filed on February 26, and that he did not then, or thereafter, hold an "adverse interest" by virtue of such representation. Accordingly, Armstrong was sufficiently "disinterested" and his employment under § 327 was not inappropriate.

**Armstrong Satisfied the Duty of Disclosure under the Bankruptcy Rules.** George's second point of contention goes to Armstrong's disclosure (or lack thereof) of a prepetition connection with George in the Employment Application. Federal Rule of Bankruptcy Procedure 2014(a) requires disclosure under penalty of perjury of all relevant facts necessary for the court to determine the applicant's eligibility for employment under § 327(a). Failure to make full disclosure may result in disqualification of a professional person. "If the lack of disclosure is discovered after employment is approved it may also result in denial and disgorgement of compensation." *In re Hathaway Ranch Partnership*, 116 B.R. 208, 220 (Bankr. C.D. Cal. 1990) (citations omitted). As noted above, Armstrong did disclose his meetings with George, but George contends that the disclosure was insufficient for purposes of Rule 2014(a).

After further review, the court is satisfied that Armstrong, in Appendix A of the declaration filed in support of the Employment Application, sufficiently disclosed the fact that he had a prepetition connection with George. Armstrong

9

met with George on several occasions to discuss, *inter alia*, the CVCB Litigation. He was not required to disclose the substance of those conversations with George and it would have been professionally inappropriate for him to do so. Armstrong's disclosure was sufficient to put the court and all interested parties, including George, on inquiry notice that George had been meeting with Armstrong for essentially the same purpose for which Charlotte subsequently engaged Armstrong. Since both apparently met with Armstrong to discuss the same CVCB Litigation and protection of essentially the same assets, it is not clear what more Armstrong could have, or should have, disclosed in support of the Employment Application.

**California Law and the "Substantial Relationship" Test.** George contends that he holds a personal right under California law to object to Armstrong's representation of Charlotte because he divulged confidential information to Armstrong during the course of their meetings. In George's words, "Armstrong switched sides" when he undertook the representation of Charlotte. Implicitly, George now contends that Charlotte was an adverse party, however he does not articulate the basis for that adversity. The court is mindful of the fact that George initially consulted with Armstrong for the purpose of representing all defendants in the CVCB Litigation. That would necessarily include both himself and Charlotte. (*See supra* note 5.) There is no evidence that George and Charlotte were adverse parties at the time Charlotte's bankruptcy case was filed and the Employment and Fee Applications were approved. However, George's filing of this Motion, the proof of claim in this bankruptcy for the value of "separate property," and the subsequent filing of his own bankruptcy, forces the court to revisit this issue. George's bankruptcy schedules assert an interest in some of the same property that Charlotte scheduled as community property, and Armstrong, on behalf of Charlotte's estate, has filed a motion for relief from stay in George's case seeking to exercise potentially adverse rights with regard to the 140 Acres.
///

This Motion relies, *inter alia*, on the California State Bar Act (Bus. & Prof. Code § 60000 et seq.), and the California Rules of Professional Conduct ("State Rule"). Attorneys who appear in the bankruptcy courts of the Eastern District of California are subject to these statutes and rules. Local Bankruptcy Rule 1001-1(c), adopting Local District Rule 83-180(e). The relevant rule, State Rule 3-310(E), relates to the representation of adverse interests and states:

> "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

To prevail under State Rule 3-310(E), George must show that, "by reason of the representation [consultation with] . . . [George], [Armstrong] has obtained confidential information material to the employment [by Charlotte]."

The analysis under State Rule 3-310(E) in the bankruptcy context was addressed by Judge Bufford in *In re Muscle Improvement, Inc.*, 437 B.R. 389 (Bankr. C.D. Cal. 2010). In that case, the subject attorney consulted twice with the prospective debtors regarding the filing of a bankruptcy petition, but she was not retained to do so. She then undertook the representation of the debtors' primary creditor after the petition was filed by another attorney. Although the debtors had not retained the attorney, the debtors successfully disqualified that attorney from representing the adverse creditor because there was a "substantial relationship" between the debtors' consultation with the attorney and the attorney's subsequent representation of the creditor. That "substantial relationship" created an *irrebuttable presumption* that confidential information had been divulged and, therefore, in light of the debtors' objection, the attorney could not represent the party with adverse interests.

///
///
///

Case 15-10705    Filed 08/26/15    Doc 581

The public policy at issue here was explained in the Ninth Circuit case, *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980).

> The interest to be preserved by preventing attorneys from accepting representation adverse to a former client is the protection and enhancement of the professional relationship in all its dimensions. . . . These objectives require a rule that prevents attorneys from accepting representation adverse to a former client *if the later case bears a substantial connection to the earlier one.* Substantiality is present if the factual contexts of the two representations are similar or related.

*Id.* at 998 (emphasis added) (citations omitted).

In the Ninth Circuit the relevant test for disqualification is whether the former "representation" (here, consultation) is "substantially related" to the current representation of Charlotte and her bankruptcy estate.

> [T]he underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought. *The test does not require the former client to show that actual confidences were disclosed.* That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason *restricted to the scope of the representation engaged in by the attorney.*

*Id.* at 999 (emphasis added) (citations omitted).

In the course of the consultation, it does not matter whether or not confidential information has actually been exchanged.

> [I]t is immaterial whether [the attorney] actually obtained confidential information in the course of her meeting with debtors' agents. The two dispositive issues are whether the subject matter of their meetings is substantially related to the subject matter of this case, and whether [the attorney's] relationship with debtors was one in which confidential information would ordinarily be disclosed.
>
> Here, the undisputed facts resolve both of these issues in favor of debtors. The court finds that movants have met their burden to show that [the attorney] must be disqualified.

*Muscle Improvement, Inc.*, 437 B.R. at 396.

/ / /

Although in *Muscle Improvement, Inc.*, the debtors did not retain the attorney, "because of the initial consultation, [the attorney] is now subject to disqualification from representing [the adverse party]." Though harsh, the rule is one of necessity and supports the important public policy of protecting client confidentiality. *Id.* at 393-94. According to *Trone*, the rule is necessary to, *inter alia*, implement canons of professional ethics:

> Canon 1 (maintaining integrity and confidence in the legal profession); Canon 4 (preserving confidences and secrets of a client); Canon 5 (exercise of independent professional judgment); Canon 6 (representing a client competently); Canon 7 (representing a client zealously within bounds of the law); Canon 9 (avoiding even the appearance of professional impropriety).

The resolution of this issue, of whether confidential information was shared, creates a conundrum. A *prima facie* attorney/client relationship is presumed under California law at the time of preliminary consultations "with a view toward retention." *Id.* at 395. It is not clear whether Armstrong provided legal advice to George. Had he done so, the court must assume confidential information was disclosed. *Id.* Otherwise, the court must consider whether the attorney was in a situation where the attorney was likely to receive confidential information. *Id.* However, the court may not inquire as to that information, which would require disclosure of the very confidential information that is being protected. Instead, the "substantial relationship" test is used as a substitute. *Id.* at 394. Where there is a "substantial relationship" between the consultation with a potential client, and the subsequent representation of an adverse client, an *irrebuttable presumption* arises that confidential information has been exchanged and disqualification of the attorney is mandatory. *Id.* at 394-395 (*citing Flass v. Superior Court*, 9 Cal 4th 275, 283 (1994)).

Here, there is no dispute that George consulted with Armstrong with a view to retaining Armstrong to represent both himself and Charlotte in connection with the CVCB Litigation and potentially a chapter 11 bankruptcy. Armstrong even

requested a retainer from George for the purpose of prospective representation. It is also undisputed that Armstrong undertook the representation of Charlotte in connection with, and response to, the very same CVCB Litigation. It is a mystery to this court what "confidential" business and asset information George could possibly have shared with Armstrong that Charlotte, his wife and business associate of many years, did not already know, and there is no evidence to suggest that Armstrong betrayed any such confidence or misused any such information. However, the consultations with George and representation of Charlotte were substantially related, the "confidentiality" presumption is irrebuttable, and under California law, disqualification is mandatory. *Muscle Improvement, Inc.*, 437 B.R. at 394-95. Accordingly, Armstrong can no longer represent Charlotte or her bankruptcy estate over George's objection.

**Disgorgement.** Finally, the court will address George's demand that Armstrong disgorge all fees he has received in connection with this case. Based on the circumstances, the court looks to the ruling in *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 192 B.R. 549, 553-54 (9th Cir. BAP 1996). In *First Interstate Bank*, the attorney made a complete disclosure before employment which showed that the attorney was a prepetition creditor of the debtor, but the court approved the application anyway. The Bankruptcy Appellate Panel (the "BAP") reversed the employment order on appeal by another creditor. The order approving the attorney's fee application was also appealed. Because the attorney's disclosure was complete, the BAP said that the attorney had a right to rely on the employment order based on the state of the law at that time. It reversed and remanded the fee application to the bankruptcy court to decide whether the attorney's status adversely affected its representation of the debtor. *Id.* at 555.

Here, Armstrong was not a creditor of Charlotte's, nor was there any other then-apparent circumstance which would have disqualified Armstrong from

employment at the commencement of the case. There was no objection to Armstrong's Employment Application, nor to his subsequent Fee Application. George initially met with Armstrong to discuss bankruptcy remedies for both himself and Charlotte. Presumably, George felt their interests were aligned at that time. George contends that Armstrong was, at one time, his attorney, but he did not assert any interest adverse to this estate until much later, when this Motion, his proof of claim, and subsequently his own bankruptcy were filed. Armstrong had a right to rely on the employment order and there is no evidence that George's prepetition consultations with Armstrong have adversely affected Armstrong's representation of Charlotte and the estate, duties for which he was entitled to be compensated.

## CONCLUSION.

Based on the foregoing, the court finds and concludes that George's prepetition consultations with Armstrong had a substantial relationship with Armstrong's subsequent representation of Charlotte at the commencement of this bankruptcy case. Accordingly, in light of George's objection, and based upon the irrebuttable presumptions and applicable California law discussed in *In re Muscle Improvement, Inc.*, Armstrong cannot continue to serve as counsel for this bankruptcy estate without George's consent. The Motion seeking to terminate Armstrong's employment under § 327 will be granted prospectively. The Motion requesting disgorgement of the fees paid to Armstrong will be denied. The prayer for the appointment of a chapter 11 trustee and disgorgement of moneys from Charlotte will be denied without prejudice.[11]

Dated: August 26, 2015

W. Richard Lee
United States Bankruptcy Judge

---

[11] This Memorandum Decision accompanies the court's Order Granting Motion to Disqualify Debtor's Counsel and Denying Motion to Compel Disgorgement of Fees filed on August 19, 2015. (Doc. No. 551.)

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked_____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Thomas H. Armstrong, Esq.
Law Office of Thomas H. Armstrong
5250 N. Palm, Suite 224
Fresno, CA 93704

Gregory Powell, Esq.
Assistant U.S. Trustee
Office of the U.S. Trustee
2500 Tulare Street, Suite 1401
Fresno, CA 93721